## CURTIS ELKINS *v.* JAMES HAMILTON AND OTHERS.

The declarations of a person, when made in connection with his acts, which be-come controverted matters upon the trial of a case, may be proved, as part of the *res gestæ.*

But where a person was laboring upon a farm, and a question arose, whether he had such an interest in the farm as to render the hay raised upon it attachable for his debts, it was held, that his declarations, made while he was purchasing

seed corn at a place two miles from the farm, that he had hired the farm and was going to carry it on, were not competent evidence upon the issue, as part of the *res gestæ*, in a suit between the attaching creditor and another person, who claimed to be the real owner of the hay.

So it was held, that the declarations of such person, while laboring in another place, four miles from the farm, that he was carrying on the farm, and as to the quality of the hay raised upon it, were not admissible, as evidence in such suit.

TRESPASS for taking a quantity of hay. Plea, the general issue, with notice of special matter of defence, and trial by jury, June Term, 1847,—DAVIS, J., presiding.

On trial the plaintiff gave evidence tending to prove, that one Bradley Sanborn hired of one Upton, February 22, 1844, a farm in Jay, called the Burt farm, and took a written lease for one year; that Sanborn then leased the house and garden upon the farm to one Putnam, who occupied them until late in the autumn of 1844, as tenant under Sanborn; that in March, 1844, Bradley Sanborn hired one Enoch Sanborn to carry on the farm, find the seed and team, and sow and harvest the crops, for sixty dollars, to be paid to him in produce in the course of the season; that Enoch Sanborn accordingly carried on the farm, under this contract, and cut the hay, which grew thereon, and placed it in a barn upon the premises; that Bradley Sanborn afterwards, on the fourth of February, 1845, sold the hay in question to the plaintiff; and that the defendants, on the 18th of March, 1845, took away the hay and converted it to their own use.

The defendants proved, that in December, 1844, the hay in question was attached by the defendant Hamilton, as deputy sheriff, as the property of Enoch Sanborn, by virtue of a writ of attachment against him, and that the hay was duly sold by Hamilton, at sheriff's sale, February 22, 1845, and was afterwards removed by the defendants, in pursuance of the sale. The defendants then offered to prove, that in the spring of 1844 Enoch Sanborn applied to one Perkins, at his house, about two miles from the Burt farm, to purchase some seed corn, and that he then told Perkins, that he had hired the Burt farm and was going to carry it on. The plaintiff objected to any evidence of the declarations of Enoch Sanborn, in relation to carrying on the farm, unless the plaintiff was in some

way connected with them. The court decided, that Sanborn's naked declarations, unconnected with his acts, and not in the presence of or sanctioned by the plaintiff, were inadmissible; but that what he said, as to the use intended to be made of the seed corn and the manner of carrying on the farm, at the time of buying the seed corn, was proper evidence. The defendants also offered to prove, that Enoch Sanborn, in the summer of 1844, while laboring upon another farm, about four miles from the Burt farm, said that he was carrying on the Burt farm, but did not say on what terms, or how, and that he said he had cut some very good hay there, which would be good enough to feed his or any body's oxen upon the next spring,—neither the plaintiff nor Bradley Sanborn being present. To this evidence the plaintiff objected; but it was admitted by the court. The defendants then offered to prove, that Enoch Sanborn, after the sale of the hay by Bradley Sanborn to the plaintiff, called upon several persons and requested them to bid off the hay at the sale by the defendant Hamilton, and let him, the said Enoch, have the hay; and that he did induce one person to attend the sale, for the purpose of bidding off the hay for him. This evidence, also, was objected to by the plaintiff, as being the sayings of Enoch Sanborn, but was admitted by the court. It did not appear, that the plaintiff had knowledge of these facts. The defendants then offered to prove, that Enoch Sanborn, while he was cutting the hay, and afterwards in the autumn of 1844, drew away from the farm, or from the barn thereon, one or more loads of hay; and that, without the knowledge of the plaintiff, he applied to a justice of the peace, after the removal of the hay by the defendants, and requested him to sign a writ in favor of the plaintiff for taking away said hay. To this evidence the plaintiff also objected; but it was admitted by the court.

The plaintiff requested the court to charge the jury, that the declarations of Enoch Sanborn, made in the absence of Bradley Sanborn and the plaintiff, and without their knowledge or assent, were not evidence against the plaintiff. But the court instructed the jury, that they might consider the evidence before them of the acts and declarations of Enoch Sanborn, in connection with the other circumstances, as tending to show, that Enoch Sanborn did in fact own the hay.

Verdict for defendants. Exceptions by plaintiff.

---

Elkins *v.* Hamilton et al.

---

*N. Boardman* and *S. Sumner* for plaintiff.

——————————— for defendants.

The opinion of the court was delivered by

REDFIELD, J.   The only question in the present case, upon which there seems to be any doubt of the correctness of the trial in the court below, is in regard to the declarations of Enoch Sanborn, which the court admitted, as a part of the *res gestæ.*   The court were no doubt right in regarding his naked declarations as not being competent evidence ; and equally correct in admitting them, when made in connection with his acts, which became controverted matters in the trial.   There is no way of determining the true character of an equivocal act, but by the declarations of the agent, at the time, and in connection with the act.   And when a series of acts come in controversy, as, in the present case, the carrying on a farm for the season, much must, no doubt, be left to the discretion of the judge, in determining what declarations are thus to be admitted, as part of the *res gestæ.*   Nor should we be inclined to order a new trial, for the admission of any declaration, under such circumstances, where there was *any* reason to suppose it could have any *tendency* to characterize the acts in question.   And even where improper declarations are admitted, if the jury are told, in general terms, how to distinguish between those declarations which are competent, and those which are not, we should not order a new trial on account of admitting the evidence.   But in the present case the declarations were admitted, under objection, and without any intimation to the jury, that they were not all to be regarded as evidence.   This was, in effect, telling them, that they were competent evidence, and, as such, to be weighed.   If, then, they were clearly incompetent, there must be a new trial.

The declarations principally complained of are those in regard to seed corn, and to the hay.   It was, no doubt, proper enough to show, by the declarations of Enoch Sanborn, on whose account and for what purpose he obtained the seed corn.   But how his declarations, made at that time in regard to the general mode of carrying on the farm, had any tendency to give character to the act of an offer to buy seed corn is certainly not very obvious.   It seems to us a

somewhat latitudinarian construction of the rule, admitting declarations as a part of the *res gestæ*.   But what was said by Enoch Sanborn, while at work upon another farm, as to the mode of carrying on this farm, and the quality of the hay cut thereon, does not seem to us to have been evidence of any importance in determining the case.   But, as the defendant insisted upon having it in the case, notwithstanding the remonstrances of the plaintiff, we presume he expected it to have some influence upon the case; and as it is *clearly incompetent,* it is but just, perhaps, that there should be a new trial.

Judgment reversed; new trial granted.