Joynes, J.
On the 9th day of September 1861, Spiro Zetelle, then a resident of Richmond, being about to go to Europe, to remain there for an indefinite time, executed a power of attorney by which he constituted Grustavus A. Myers and Frederic J. Cridland his agents and attorneys in fact. The powers conferred by this instrument were of the most ample character. Besides the enumeration of many particular powers, there is this general clause, “to do, transact, execute, and perform, all proper, legal, equitable, needful, and requisite acts, matters, and things, relative to my affairs, business, and concerns, of all and every Mnd whatsoever, in the city of Richmond aforesaid, none excepted or reserved.” There is also this general clause, designed to comprehend any thing that might possibly have been omitted: “It being meant and intended by me to authorize and empower, and I do hereby authorize and empower my said attorneys, or either of them, to do every matter and thing for me, in any right and capacity whatsoever, which can possibly be devised and lawfully done, although the same may be omitted to be herein particularly set forth.”
At the time this power was executed, Zetelle owned a house and lot in Richmond, which was in the occupation of a tenant, and some furniture and personal effects, and had debts due to him to the amount of several thousand dollars, falling due at different times, from November 1, 1861, to November 1, 1865.
On the same day (September 9,1861) Zetelle and wife executed a deed, whereby they conveyed the said house *64 and lot to the said Myers and Cridland, upon trust, and with power to lease the same for such term, and for rent as they, or either of them, might deem most advantageous, to cause to be made all necessary repajrs^ an(j ±Q pay aq necesgax-y and proper charges, taxes, premiums of insurance, assessments, and dues accruing on the said property. And upon further trust, at such time, in such manner, and upon such terms as the said trustees, or either of them, should think most beneficial, to make sale of the said property, and to collect all sums of money arising from such rents and sale. And upon further trust, from time to time, as they should come to their hands, to pay over to said Zetelle, his representative or assigns, all sums of money that may come to their, or either of their, hands, after deductixig a commission of five per cent. One object, certainly, for the execution of this deed, was to enable Myers and Cridland to pass the title of Mrs. Zetelle, by their conveyance of the house and lot in case of a sale. Whether there was any other object it is not necessary now to say. That may be a question hereafter.
Myers and Cridland made sale of the real estate in March 1862, and received the proceeds of sale. After the close of the war in 1865, Zetelle returned to Bichrnond, and in [February 1867, filed the bill in this case, charging Myers and Cridland with a breach of trust in failing to remit to him the money arising from the sale of the house and lot under the deed, and from rents received by them before the sale. The deed and power of attorney are both exhibited with the bilk It is alleged that the plaintiff has sued the defendants at law in reference to their proceedings under the power of attorney, and the declaration and bill of particular’s in that action are in the record. The plaintiff in that action seeks to charge the defendants with the amount of the several debts and the value of the per *65 sonal effects, as having been received by them, and not accounted for.
The bill alleges, that after the plaintiff returned to Richmond, he applied to Myers (Cridland having removed to another State), for an account of the agency and .trust: that Myers informed him that the money arising from the sales and collections made by himself and Cridland had been invested in Confederate bonds, (except a small sum which remained in Confederate notes), so that the whole had been entirely lost; and that he exhibited an account of the transactions of himself and Cridland; which account he indignantly rejected. This account is exhibited with the bill.
Cridland was proceeded against as a non-resident. Myers filed an answer, in which he embodied a demurrer to the bill, and among other things, insisted that the power of attorney covered the money which came to the hands of Cridland and himself under the deed of trust, so that the action at law would embrace the claim set up in this suit. He therefore submitted a motion that the plaintiff should he put to his election whether he would proceed in this suit or in the action at law, alleging that both were for the same subject matter and cause of action. The motion was overruled; and upon the final hearing on the pleadings and evidence, the bill was dismissed with costs.
It is a general rule, that an action at law cannot be maintained against a trustee to recover money due from him in that character. Pardoe v. Price, 16 Mees. & Welsh. R. 457. If, however, the trustee has appropriated a certain sum as payable to the cestuis que trust, as for example, by the settlement of an account showing a balance due him, or otherwise admits that he holds it to be paid to the cestuis que trust, or for his use, an action at law for money had and received will lie, because the character of the relation between the parties in respect to the money is changed. The *66 trustee no longer holds the money as trustee, properly so called, but he holds it as a receiver for the use of the cestuis que trust. Edwards v. Lowndes, 1 El. & Bl. R. 81, (27 Eng. Com. L. R.)
It was contended here by the counsel for the defendants, that the money which came into their hands as trustees under the deed, had been carried into their account as agents, and was no longer held by them as trustees, properly so called, and so might be the subject of an action at law, in like manner as the money received immediately under the power of attorney. Indeed, it was contended that after the money had been, as thus -alleged, transferred from the hands of the defendants as trustees to their hands as agents, the only remedy of the plaintiff was at law; so that this suit should be dismissed for want of jurisdiction. But as we shall presently see, the transactions of the defendants as agents under the power of attorney, are a proper subject for the jurisdiction of equity, as well as their transactions under the deed of trust; so that if the money received by the defendants under the deed did, as contended for, pass into their hands as agents, and become thereby the subject of an action at law, it did not cease to be the subject of equitable jurisdiction. It is not necessary, however, to decide whether the trust fund became thus, along with the fund arising under the power, the subject of an action at law, so as to entitle the plaintiff, at his option, to sue for the entire subject at law or in equity. For this is not a case for applying the ordinary rule, by which a plaintiff, who is asserting the same demand at law and in equity, is put to his election. Whatever it may have been competent for him to do, the plaintiff is not, in point of fact, asserting the same demand in both suits. We may, however, reach substantially the same result in another way.
The deed of trust and power of attorney were • exe *67 cuted at the same time, and for the purpose of effecting the same general object, namely, the management and disposition of the plaintiff’s property and during his absence from the country. They constituted in fact but one general agency; the power attorney embracing all the property, and the deed of trust embracing the real estate only; for the purpose of investing the agents with an authority which was not, and could not have been, conferred by the power of attorney, namely, the authority to pass the interest ■of Mrs. Zetelle. Whether the deed of trust devolved any duty upon the trustees in respect to the money they were to receive under it, which was not devolved upon them by the power of attorney in respect to other money, is immaterial to the present purpose. And accordingly, the plaintiff in his bill treats these instruments as designed for a common purpose, and to create one general agency for the management of his affairs; and the defendants so regarded them, as appears from their blending all their transactions in one common account.
It is a rule, founded on the principle of preventing unnecessary and vexatious litigation, that a plaintiff shall not be allowed to split up a single cause of action, so as to make it the subject of several suits. On this ground, a court of equity will not allow a bill to be brought for part of a matter only, when the whole is the proper subject of one suit. Thus, it will not permit a party to bring a bill for part of one entire account, but will compel him to unite the whole in one suit; for otherwise he might split it up into various suits, and thus promote the most oppressive litigation. Story Eq. Pl. 287. If, therefore, the transactions under the power of attorney were proper for the jurisdiction of a court of equity, they ought to have been united in this suit with the transactions under the. deed of trust, as they. all pertained to the *68 same general and. common agency. And that course would be attended with this practical advantage in that it would avoid having the same ques^Qng ^gt-ween the same parties, and in reference to the same general subject matter, litigated before different forums, which might come to different conclusions on the same facts. It is important, therefore, to enquire, whether the transactions of the defendants under the power of attorney were proper for the jurisdiction of a court of equity.
In Mackenzie v. Johnston & al., 4 Madd. R. 373, the bill was filed for an account of certain earthenware which the plaintiff had delivered to the defendants, who were the owners of a vessel, to be shipped by them to Bombay and sold. The defendants demurred, and it was contended that equity had no jurisdiction of the case. The Vice Chancellor (Sir John Leach) overruled the demurrer. He said: “The defendants here were agents for the sale of the property of the plaintiff; and wherever such a relation exists, a bill will lie for an account. The plaintiff can only learn from the discovery of the defendants how they have acted in the execution of their trust, and it would be most unreasonable that he should pay them for that discovery, if it turned out that they had abused his confidence. Yet such must be the case, if a bill for relief will not lie.”
The agency in that case, as in the one now before us, was of a fiduciary character, involving trust and confidence, and making it necessary for the agents to keep accounts and preserve vouchers. The jurisdiction, thus for the first time in the year 1819, distinctly asserted over this class of cases, has been fully established by subsequent cases in England. Thus, in Hemmings v. Pugh, 9 Jurist. N. S. 1124, decided in 1863, Vice Chancellor Stuart said: “I take it to be the law of this court, where the agency partakes of a fiduciary *69 character, that the jurisdiction of this court attaches, and that the court will ordain a decree for an account, although all the items of it may be on one side, ® although there may be no mutual dealings between the parties.” The jurisdiction was declined in that case, because although there was an agency, it did not have any fiduciary character.
In Phillips v. Phillips, 9 Hare R. 471, S. C. 12 Eng. L. & Eq. 259, Vice Chancellor Turner was of opinion that a bill would not lie in every case by a principal against his agent, and that equity would not entertain a bill for an account except in a case of mutual accounts; which he understood to mean, not merely where one of two parties has received money and paid it on account of the other, but where each of two parties has received and paid money on account of the other. This objection had been urged by counsel and overruled in Mackenzie v. Johnston. And the same objection was made and overruled in Makepeace v. Rogers, 11 Jurist. N. S. 215, decided in 1865. In that case a land owner filed a bill against the agent and manager of his estates, for an account of all moneys received, and of all expenses paid by such agent, and for payment of the balance that might be found to be due. The defendant filed a demurrer, which was overruled by Yice Chancellor Stuart. He said, in the course of his opinion, “I conceive that wherever the relation between the person who seeks an account, and the person against whom he seeks it, partakes of a fiduciary character, a trust is reposed by the plaintiff in the defendant, and that that trust is not the same as is represented to exist in the ordinary employment of an agent, such as a builder or other tradesman. The fiduciary character of the employment imposes upon the person employed the duty of keeping accounts and of preserving vouchers; and according to the old law, which I trust will continue to be the law of this court, *70 a bill for an account in equity may be filed and sus- -*• *• *j tained.” The Vice Chancellor disapproved of the opinion of Chief Baron Alexander, in King v. Rossett, 2 Young & Jev. 33, that before a court of equity will interfere upon a bill filed by a principal against his agent for an account, it must be shown that the accounts are so complicated that they cannot be properly investigated at law. The decree of the Vice Chancellor was affirmed by the Lords Justices of the Court of Appeals. 11 Jurist. N. S. 314. Lord Justice Knight Bruce said, that there was no authority for saying that there must be demands on both sides; and that an account might be obtained without any charge of fraud or misrepresentation. Lord Justice Turner said, that there was no authority to show that a bill would not lie at any time by a principal against an agent for an account. He said there was nothing to the contrary in the decision of Phillips v. Phillips (above cited), and that he regretted that any thing he had said in deciding that case should have misled any one. '
There are many other cases in the English courts bearing upon the jurisdiction of courts of equity in cases of account, which show that the extent and grounds of that jurisdiction have been the subject of' much diversity of decision. See Haynes’ Outlines, 236-254; Dabbs v. Nugent, 11 Jurist. N. S. 943. It is, not necessary to consider them, for the cases which have been cited, and which rest on the most satisfactory grounds, fully establish the jurisdiction of equity in the case of such an agency as that created by the power of attorney in the present case.
It was contrary, therefore, to the principles which govern the proceedings of courts of equity, to embrace in this suit only such of the transactions under the general agency as took place under the deed of trust; while those under the power were made the subject of an action at law. The bill was liable to the demurrer *71 filed by Myers for thus embracing only part of the subject matter, the whole of which should have been embraced in it. And the objection was sufficiently raised, too, by the motion to put the plaintiff to his election. The Circuit court should not, therefore, have overruled that motion, thus leaving the plaintiff at liberty to proceed in both suits. Instead of that, the Circuit court should have made an order requiring the plaintiff to make his election, within a time specified, whether he would amend his bill in this case so as to embrace therein the transactions under the power of attorney, as well as those under the deed of trust, and dismiss his action at law; or whether he would prosecute his action at law, and in the event of his electing to prosecute his action at law, or failing to make any election, the bill in this case should have been dismissed with costs. This would have been the same, in effect, as to sustain the demurrer, with leave to the plaintiff to amend the bill and make his election.
The appellee, having obtained a decision of the Circuit court in his favor, on the merits, has not insisted here, as he did there, that the plaintiff should not have been allowed to prosecute both suits, and of course the objection is one that could not be made by the appellant. But we are satisfied that the justice of the case requires that that objection should be sustained, and we therefore put our decision on that ground, without intimating any opinion on the merits. If we should decide the case upon the merits, a serious question might arise in the action at law, whether it could be proceeded in, inasmuch as this suit, involving part of the entire cause of action, had been decided on the merits. It is a general rule, that a judgment in an action for any part of an entire cause of action, is a bar to another action founded on any other part of the same entire cause of action. Hite v. Long, 6 Rand. 457.
*72 The decree must therefore be reversed, and the , , ' cause remanded.
The other judges concurred in the opinion of j0YNES, J.
The decree was as follows:
The court is of opinion, for reasons, &c. that the ! power of attorney and deed of trust in the bill mentioned were designed to effect one general and common object, namely, to entrust the defendants with the control, management and disposition of the property and affairs of the plaintiff, in the manner set forth therein, during his contemplated absence from the country. The court is further of opinion, that the transactions of the said defendant under the authority conferred by the said power of attorney, as well as their transactions under the authority conferred by the deed of trust, were proper subjects for the cognizance and jurisdiction of a court of equity; and that it was not competent for the plaintiff to proceed against the defendants in this suit in respect to the transactions under the deed of trust, and in the action at law in the bill mentioned in respect to the transactions under the power of attorney. The court is further of opinion, that instead of overruling the motion of the defendant Myers to put the plaintiff to his election whether he would prosecute this suit or the said action at law, the said Circuit court should have made an order requiring the said plaintiff to make his election within a time specified, whether he would amend his bill in this case so as to embrace therein the transactions under the power of attorney, as well as those ■ under the deed of trust, and dismiss his said action, at law, or whether he would prosecute his action at law; and that in the event of his electing to prosecute his said action at law, or failing to make any election, the *73 said Circuit court should have dismissed the hill in this case with costs; and that the said decree is therefore erroneous.
Wherefore, it is adjudged, ordered and decreed, that the said decree be reversed and annulled, and that the appellant pay to the appellees as the parties substantially prevailing, their costs by them expended in this court; the appellees being regarded as the party substantially prevailing, because the decree of the Circuit court is reversed for an error committed by the appellant.
And it is ordered that the cause be remanded to the said Circuit court for further proceedings, in conformity to the foregoing opinion and decree. Which is ordered to be certified, &c.