## CHARLES A. TRAFFORD & ALLISON W. TRAFFORD, Copartners, *vs.* GEORGE W. HUBBARD *et als.*

The individual interest of a copartner in the copartnership effects is attachable. The attachment may be made by seizure of the effects, and the attaching officer may remove them for safe keeping.

That the defendant copartner has overdrawn his account with the copartnership does not invalidate the attachment.

But the execution and record by the defendant copartner of a general assignment for the benefit of his creditors under Pub. Stat. R. I. cap. 237, § 12, at once dissolves the attachment.

September 21 a writ was issued against one of the copartners in the firm of B. & T., and was served by attaching the goods in the store of B. & T., a keeper being put in. October 5,

the lease which B. & T. had of this store expired, and a new lease was taken by T. & T., who notified the attaching creditor, and requested the removal of the keeper. The attaching creditor refused to remove him.

*Held*, that T. & T. could maintain an action against the creditor for the injury caused to their business.

*Held*, further, that T. & T. could waive damages caused by the acts of the creditor considered as trespasses, and could maintain trespass on the case for the consequential injuries to their business.

TRESPASS ON THE CASE.   On demurrers to the declaration.

The declaration contained two counts : —

1. It charged that Hubbard, September 21, 1885, sued out a writ against one Brayman, who at that time was a copartner with the plaintiffs in a firm called Brayman & Trafford, served it by attaching the stock in the store of Brayman & Trafford, placed a keeper in the store, and kept him there till December 7, 1885; that at the time of the attachment Brayman had overdrawn his whole interest in the firm property; that the books of the firm showing this were submitted to Hubbard; that the firm was dissolved the day after the attachment by mutual agreement; that Hubbard refused to remove the keeper until December 7, 1885, when he took away from the store some of the stock attached.

2. It charged the matters in the first count, and added that, September 22, 1885, Brayman made and recorded an assignment for the equal benefit of his creditors of all his estate, except so much thereof, other than debts secured by bills of exchange and negotiable promissory notes, as was exempt from attachment by law.

The plaintiffs brought this action against Hubbard, the sheriff, and the keeper, for damages arising from loss of goods, injury to credit, and diminution of profits.

The defendants demurred separately to each count in the declaration.

*June* 11, 1886.   DURFEE, C. J.   We think the first count in the declaration is bad.   This court decided in *Randall* v. *Johnson*, 13 R. I. 338, that the individual interest of a copartner in the firm effects is attachable by seizure of the effects. . If the right to attach exists, it carries the usual incidents of attachment, namely, the right of the attaching officer to take and retain possession of

the goods attached, and to that end to remove them for conven-
ience and safety of keeping.    Undoubtedly this tends to embar-
rass, and possibly to break up, the copartnership business; but
we do not see how these consequences can be avoided at law, even
if they can in equity, without remedial ,legislation.    The removal
was none the less valid because it was a removal of a part only of
the goods attached.    The effect of this was to release the attach-
ment on the goods unremoved, and to retain it to the extent of
the individual interest of the partner sued, only on the goods
removed.    Neither do we think the attachment was invalid be-
cause the partner sued had at the time largely overdrawn his
account with thé firm, as alleged, or because, upon a winding up
of the concerns of the firm, there would be nothing coming to
him.    His legal interest in the firm effects still remained, subject
to the equitable lien of the copartners, and this interest was
attachable even though the effect would be that, upon sale thereof
under the attachment or on execution, the purchaser would get
only a right to an account which would profit him nothing.    Of
course the copartners could not in any wise impair the right of
the attaching creditor by agreeing, after the attachment, to a dis-
solution of the copartnership.    Collyer on Copartnership, 3d Amer.
ed. § 822 and note.

The second count alleges, in addition to what is alleged in the
first, that the partner sued, on the day following the attachment,
made a general assignment, recorded the same day, for the ben-
efit of his creditors, under Pub. Stat. R. I. cap. 237, § 12,[1] the

---

[1] As follows : —

" Sect. 12. Whenever the property of any debtor shall be attached or
levied upon by any creditor, the debtor may, at any time before such property
shall be sold, and the proceeds thereof applied to the payment of the claim or
judgment upon which such attachment or levy shall have been made, and
within sixty days after such attachment or levy, dissolve such attachment or
levy by making and having recorded in the records of the town or city where
the assignor resides, or where any of the real estate of such debtor is located,
an assignment of all the property and estate of such debtor, except so much
thereof, other than debts secured by bills of exchange or negotiable promissory
notes, as is or shall be exempted from attachment by statutes of the State and
of the United States, to some citizen of this State, for the equal benefit of all
his creditors, in proportion to their respective claims, except as is provided in

effect of which was to dissolve the attachment. This was before the goods attached had been removed. We are of the opinion that the instant the assignment was made and recorded, the right of the attaching creditor or officer to retain or remove them ceased, and consequently that the plaintiffs are entitled to damages for any injuries which they have suffered by the subsequent retention and removal. The defendants contend that the right to sue for any injury resulting from the retention and removal was only in the assignee of the assigning copartner, not in the other copartners. We do not think so. It has been decided, and we think correctly, that the assignee of a partner's interest cannot withdraw his share of the joint effects, but the continuing partner has a right to them for the purpose of paying the debts and winding up the concerns of the firm. *Horton's Appeal*, 13 Pa. St. 67.

The declaration is not attacked on any other ground.

*Demurrer to first count sustained ; demurrer to second count overruled.*

After the above decision the plaintiffs amended the first count of their declaration, and the case came again before the court on demurrer to the amended declaration.

*February* 12, 1887. PER CURIAM. Since our former decision the plaintiffs have filled a blank in the first count of the declaration, so that it now avers that the lease of the store held by Brayman & Trafford terminated October 5, 1885, and said store was then leased to the plaintiffs, and has ever since been exclusively their premises ; that the defendants had notice of this, and were requested to leave said premises and remove the keeper, but refused to do so, causing the plaintiffs great damage to their business. We think that the count as amended sets forth a cause of action which will entitle the plaintiffs to recover, if an action on the case is a proper remedy.

The defendants contend that the proper remedy for the injuries complained of in the declaration is trespass and not case, since, as

section fourteen of this chapter; and such assignment shall be effectual to convey all the property and estate of such debtor, except as aforesaid, and also all the property and estate heretofore conveyed by such debtor in fraud of the rights of creditors, or in violation of the provisions of this chapter."

alleged, they are injuries resulting from acts which were direct and intentional. The plaintiffs, however, say that they bring this action to recover, not for injuries which were the direct result of the acts committed, but for injuries to their trade and business as a new firm, which were consequential upon the acts committed, and, therefore, that for these they are entitled to sue in case.

We are of the opinion that the declaration can be considered to have been framed in that view, and, upon the authority of numerous respectable decisions, we have also come to the conclusion that, considering the action in that view, it can be sustained, inasmuch as, if the plaintiffs are willing to waive any damages which they may be entitled to, resulting directly from the acts as trespasses, the defendants have no reason to complain. *Branscomb* v. *Bridges,* 1 B. & C. 145; *Smith* v. *Goodwin,* 4 B. & Ad. 413; *Shipwick* v. *Blanchard,* 6 Term Rep. 298; *Hite* v. *Long,* 6 Rand. 457; *Knott* v. *Digges,* 6 Har. & J. 230; *Waterman* v. *Hall,* 17 Vt. 128, 42 Amer. Decis. 484; *Olinger* v. *McChesney,* 7 Leigh, 660, 683; 2 Greenleaf on Evidence, § 226.

Demurrers to both counts of the declaration overruled.