## Richmond.

MANCHESTER HOME BUILDING AND LOAN ASSOCIATION AND
OTHERS v. PORTER.

February 7, 1907.

1. TORTS—*Action for Wrongful Distress—Description of Goods Taken.*
In an action for wrongful distress for rent it is not necessary
to describe the goods taken, except that they were the plaintiff's
goods, as the gist or gravamen of the action is the wrongful dis-
tress.

2. PLEADING—*Declaration—Special Damage.*—If a declaration states a
good cause of action, independent of special damage to business,
a demurrer thereto should be overruled.

3. BILLS OF EXCEPTION—*When to be Obtained.*—Bills of exception signed
in vacation and within thirty days after the end of the term at
which final judgment is rendered are within the time prescribed
by section 3385 of Code of 1904. They are not required to be filed
at the term at which an adverse ruling is made, nor within thirty
days thereafter.

4. BILLS OF EXCEPTION—*Refusing New Trial—Certificate of All the Evi-
dence.*—A bill of exception to the action of the court in refusing
to set aside a verdict as contrary to the evidence should state,
or it should appear by clear inference, that the evidence which
is certified is *all* the evidence, else the judgment of the court will
be presumed to be right; but this requirement is met by a certi-
ficate that "*the evidence* introduced on the trial was as follows,"
followed by the evidence in detail, with nothing to show that it
was not all the evidence.

5. PLEADING—*Estoppel—General Issue—Case at Bar—Res Judicata.*—
In an action of trespass on the case for maliciously suing out a
distress warrant, upon an issue joined on a plea of not guilty,
the defendant should be permitted to show by proper records
and such parol evidence as is necessary that the question of
tenancy involved had already been litigated and determined ad-
versely to the plaintiff in an action of unlawful detainer, and
by proceedings on a distress warrant by one of the defendants
against the plaintiff, in both of which he denied the tenancy and
claimed to hold as purchaser. The fact that the judgments in

those cases were rendered after the present action was commenced is immaterial, and so likewise it is immaterial that the form of the action and the precise remedy sought in those actions and in this were different. Estoppel grows out of matter of substance, and form has little to do with it.

6. PLEADING—*Estoppel—General Issue—Evidence—Case at Bar.*—Where it does not appear from the plaintiff's declaration, in an action to recover damages for a wrongful distress, that he denied that he was the tenant of the defendant when the distress warrant was sued out, the defendant may, under the general issue, show that the plaintiff is estopped to deny the tenancy by reason of the judgment of a court of record in an action between the same parties involving that question. Letters also of the plaintiff tending to show an admission on his part that the question of his tenancy had been litigated and determined adversely to him, in the prior litigation, are admissible in evidence against him.

7. INSTRUCTIONS—*No Evidence to Support—Punitive Damage.*—When there is no evidence in a case warranting the finding of punitive damages it is error to submit the question to the jury. So also where there is no evidence that a defendant directed or approved the wrongful acts of an officer in levying a distress warrant, the question of his liability for such wrongful acts should not be submitted to the jury.

8. EXCESSIVE LEVY—*Acceptance of Excess by Debtor—Waiver.*—If an officer levies on and sells more goods than are necessary to pay a distress warrant in his hands, and pays over the excess to the tenant, who accepts the same, the receipt of the excess is a ratification of the officer's act in selling more than he ought to have sold, and is a waiver of any wrongdoing on his part in making the sale. The tenant cannot affirm in part and disaffirm as to the residue.

Error to a judgment of the Circuit Court of Chesterfield county in an action of trespass on the case. Judgment for the plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*Charles L. Page, David L. Pulliam* and *Ernest H. Wells,* for the plaintiffs in error.

*H. R. & J. G. Pollard, J. M. Gregory* and *Isaac Diggs,* for the defendant in error.

Buchanan, J., delivered the opinion of the Court.

The defendant in error instituted his action of trespass on the case to recover damages upon the ground, as is averred in the first and second counts of the declaration, that the plaintiffs in error had maliciously and without probable cause distrained his goods for rent when there was no rent due or owing, and had, as averred in the third count, wrongfully taken and carried away his goods and converted them to their own use.

There was a demurrer to the declaration and to each count thereof, which was overruled. This action of the court as to the first and third counts is assigned as error.

One of the objections made to these counts is that the goods alleged to have been levied on in the first count and taken and carried away in the third are not sufficiently described.

In an action for wrongful distress for rent it seems not to be necessary to describe the goods taken, except that they were the plaintiff's goods, as the gist or gravamen of the action is the wrongful distress.

In the case of *Olinger* v. *McChesney,* 7 Leigh 660, the description in the first count in the declaration (which is given in 4 Rob. Pr. 660, 661) was that the defendant had "distrained divers goods and chattels of the plaintiff of great value, to-wit, of the value of $300, for certain rent, to-wit, the sum of $65." A demurrer to that count was overruled. See opinions of the judges at pages 672, 673, 681, 683, 688.

In the case at bar the description of the goods in the first count is that the defendant distrained and seized, etc., "divers goods, chattels and articles of merchandise belonging to the plaintiff, of great value, to-wit, of the vaule of $150.00, for certain rent amounting to $45.00." The allegation in the third count is that, the plaintiff being lawfully possessed of "a large

lot of goods, wares and merchandise of great value, to-wit, of the value of $150.00, said goods, wares and merchandise being then and there owned, possessed and used by the plaintiff in and about his business as merchant, carried on and conducted by him *at* the county of Chesterfield, on Hull street, near Broad Rock road, and the said defendants . . . with force and arms . . . carried away the same and converted them to their own use . . ."

In discussing the description required in a declaration for taking and carrying away goods with force and arms Judge Tucker, in his Commentaries, Volume II, pages 91, 92, says that the declaration "usually sets forth the property and its value, but herein this distinction is to be observed: Where the action is *de bonis asportatis* the property should be described, though a charge of taking a quantity of poultry, to-wit, geese, ducks, etc., has been held sufficiently certain. 4 Munf. 251. The reason for requiring a description of the goods is that otherwise the defendant might not be able to avail himself of a justification which he would otherwise have, and also because without such description the record would not afford conclusive evidence of satisfaction already received for the injury as a bar to another suit for the same injury." See *Donaghe* v. *Roudeboush,* 4 Munf. 251; 21 Enc. Pl. & Pr. 821, 822.

Upon these authorities it would seem that the description of the property taken was sufficient.

The other objection urged to these counts is that they "fail to make a case for special damage to business, as seems to have been intended."

If this be conceded, it is no ground of demurrer, as each count states a good cause of action independent of the question of special damages.

The defendants tendered six special pleas, presenting, as is claimed, the defense of *res judicata.* They were all rejected by the court. This action of the court is assigned as error.

Before disposing of this assignment of error, however, it will

be necessary to consider the objection made by the plaintiff that the bill of exceptions to the action of the court in rejecting the pleas and certain other bills of exception are not parts of the record.

It is insisted by the defendant in error that bills of exceptions numbered 1, 2, 3, 4, 5 and 7 cannot be considered as parts of the record because the record discloses the fact that all of those bills were to opinions of the court announced neither at the term during which the bills were signed nor within thirty days after the end of such term, the record not disclosing the fact that there was any agreement that the said bills might be signed at any other or different time.

It is not claimed that these bills of exceptions were not signed in vacation and within thirty days after the end of the term at which the final judgment was rendered. Having been signed within that time, they are properly a part of the record, under the provisions of section 3385 of the Code of 1904, as construed in the case of *Lynchburg Cotton Mills* v. *Stanley,* 102 Va. 590, 46 S. E. 908. That case was carefully considered and the conclusion reached that the manifest object of the Legislature in enacting that section was to extend the time within which bills of exception might be signed by the court or judge. Upon the faith of that decision and in accordance with the construction it placed upon that section parties have prepared their cases for writs of error. This being so, even if we had doubts as to the correctness of that decision, as we have not, we would be unwilling to put a different construction upon a statute prescribing a mere rule of procedure which would result in depriving parties of the right to have their cases considered by an appellate court.

It is also insisted that it does not appear from bill of exceptions No. 8 that all the evidence was certified therein, and for that reason it will be presumed that the judgment complained of is right and must be affirmed. That bill of exception states that "the court doth certify the evidence introduced on the trial of

this case to have been as follows." The objection made to the certificate is that it ought to have said "all the evidence" instead of merely saying "the evidence."

It is quite true, as argued, that the bill should state, or it should appear by clear inference, that the evidence which is certified is all the evidence; otherwise the appellate court will not know upon what the lower court based its action, and its judgment on the evidence will be presumed to be right. *McArthur* v. *Grigsby*, 84 Va. 159, 4 S. E. 369, and authorities cited. When a court certifies that *the evidence* introduced on the trial was as follows, and sets it forth without anything in the record to show, as in this case, that it was not all the evidence, it is not only a clear but a necessary inference that it was all the evidence introduced.

The assignments of error to the action of the court in rejecting the special pleas tendered by the defendants, by which they sought to set up the defense of estoppel, and in refusing to permit, under the plea of not guilty, evidence of former adjudication, may be considered together. The correctness or incorrectness of these rulings will be better understood by a brief statement of the contentions of the parties in this case, and in the other cases which were relied on as adjudicating one of the questions involved in this case.

It appears that on May 1, 1901, the plaintiff, Porter, was put in possession of a house and lot by the Manchester Home Building and Loan Association, one of the defendants. The plaintiff's contention is that he went into possession under a purchase of the property at the price of $400 and was occupying it under his purchase when the distress warrant was sued out, and that he therefore owed no rent on the property. The contention of the defendants is that the plaintiff, Porter, made an offer of $400 for the house and lot to Augustine Royall and Company, agents of the Building and Loan Association, who were authorized to rent the property, but had no authority to sell it for less than $600, but were instructed to report all

offers of purchase to their principal; that the said agents agreed to submit the offer to the Home Building and Loan Association, and if the offer was accepted it was to be a sale, but if rejected Porter, who was put in possession of the property on May 1, 1901, was to pay a rental of $5 per month from that time. It was some months after this offer was made before the Building and Loan Association, which seems not to have been in active business at that time, had a meeting of its directors; when they did meet the offer was rejected, and the plaintiff notified of the fact. When the rent was demanded of Porter he declined to pay it, upon the ground that he was a purchaser and not a renter. In February following the Home Building and Loan Association, through its agents, Augustine Royall and Company, sued out the distress warrant for $45, nine months' rent, and the levy and sale complained of were made. Immediately after that sale this action was instituted. In October following, the Home Building and Loan Association brought an action of unlawful detainer against the plaintiff to recover the possession of the property. A verdict and judgment was rendered in that proceeding in favor of the Home Building and Loan Association in November, 1902. In January following, the Building and Loan Association obtained a warrant from a justice to recover the sum of $50, alleged to be due from Porter for the rent of the house and lot from February 1 to December 31, 1903. The warrant was removed to the County Court, and upon a trial thereof a judgment was rendered in April, 1903, against Porter for the amount claimed. The defense relied on in both the unlawful detainer case and in the case removed to the County Court (the records of which the defendants in this case offered with their special pleas and which they sought to introduce in evidence) seems to have been that Porter was in possession of the house and lot under a contract of purchase and not a contract of renting. When these records were offered in evidence the defendants stated that they proposed to show that the identical questions presented in this action, to-wit, the ten-

ancy of Porter and his liability for the rent for which the distress and levy complained of in the declaration were made, had been raised and decided against him in those cases.

The only ground relied on in this case to show that the distress warrant was improperly sued out is that Porter, the plaintiff, was a purchaser from and not the tenant of the Home Building and Loan Association.

If it be conceded that the special pleas did not sufficiently show that the same question was litigated and determined in those cases that was involved in this (Bigelow on Estoppel—5th Ed.—702), and that the special pleas purport to answer the whole of the declaration when they only answer the first and second counts, and were therefore properly rejected by the court (7 Rob. Pr. 162, 164; *Hunt* v. *Morton*, 8 Gratt. 578), it is clear we think that the court erred in not permitting the proper records in those cases to go to the jury with such parol evidence as was necessary to show that the question of tenancy involved in this case was litigated and determined in those cases. 1 Freeman on Judgments (4th Ed.), sections 273, 275; Note to Duchess of Kingston's Case, 2 Smith's Lead. Cas. 919 (8th Ed.); 7 Rob. Pr. 269; Bigelow on Estoppel (5th Ed.), 703. The fact that the judgments in those cases were rendered after this action was commenced does not affect the question. Bigelow on Estoppel, 706. Neither does the fact that the form of action and the precise remedy sought in those actions and in this were different prevent an estoppel. The estoppel grows out of matter of substance, and form has little to do with it. *Preston* v. *Harvey*, 2 H. & M. 55, 56; *Shumate* v. *Supervisors*, 84 Va. 574, 5 S. E. 570; Bigelow on Estoppel, 86; 2 Smith's Lead. Cas. 913, 914.

Whether it is necessary under our practice to plead an estoppel, especially where the plaintiff's cause of action is so set forth as to advise the defendant that the right or claim asserted is one against which his estoppel applies, need not be considered in this case, as it does not appear from the plaintiff's declaration

that he denied that he was the tenant of the Building and Loan Association when the distress warrant was sued out. *C. & O. Ry. Co.* v. *Rison,* 99 Va. 18, 33, 37 S. E. 320, and cases cited; *Davis* v. *Thomas,* 5 Leigh. 1; 1 Freeman on Judgments, section 283.

The action of the court in refusing to permit the letter of the plaintiff set out in bill of exceptions No. 4 to go to the jury was, we think, erroneous. The letter tends to show that the question of whether he was a purchaser or a renter of the house and lot was litigated and decided against his contention in the unlawful detainer case, and was, therefore, relevant evidence.

The jury were told by the court that if they believed from the evidence that any of the acts of trespass charged in the declaration were wantonly or recklessly committed by the defendants, or any of them, then as to such defendant or defendants they could not only give compensatory but punitive damages also.

There was no evidence whatever that the defendants, the Manchester Home Building and Loan Association, or A. Royall & Company, had wantonly or recklessly sued out the distress warrant, or that they knew of or were responsible for the manner in which the constable, Grant, to whom the warrant was delivered, levied upon and sold the plaintiff's goods. There being no evidence that they had wantonly or recklessly sued out the warrant these defendants clearly were not liable for punitive damages, and the court erred in submitting that question to the jury. *Peshine* v. *Sheperson,* 17 Gratt. 484, 94 Am. Dec. 468; *Fishburn* v. *Engledove,* 91 Va. 548, 558, 22 S. E. 354; *Kimball & Fink* v. *Borden,* 95 Va. 203, 207, 28 S. E. 207; *Norfolk Ry., &c., Co.* v. *Corletto,* 100 Va. 355, 360, 41 S. E. 740; *S. & R. R. Co.* v. *Vaughan,* 104 Va. 113, 120, 51 S. E. 452; *Big Stone Gap Iron Co.* v. *Olinger,* 104 Va. 261, 266, 51 S. E. 355.

By the last clause of instruction No. 3 given by the court the jury were told that the defendants, the Building and Loan Association and A. Royall & Company, could not be held liable in damages for the improper and illegal manner in which the

other defendant, the constable, may have executed the distress warrant, unless they directed or approved his action, or, after full knowledge thereof, failed to repudiate the same.

The evidence does not tend to prove that those defendants directed or approved of the manner in which the constable executed the warrant, or that they knew how it had been executed until after this action was brought. (1 Cooley on Torts, 217, 221.) The question of their liability for the officer's acts ought not, therefore, to have been submitted to the jury.

The court was asked by the defendants to give the following instructions to the jury: "The court instructs the jury that if they believe from the evidence that the plaintiff, T. D. Porter, received and accepted the $20.54, the amount of the surplus proceeds of the sale of the goods made by W. E. Grant, the constable, under the distress warrant mentioned in these proceedings, from the said constable, that was a ratification, acceptance and confirmation of the said distress warrant, the levy thereunder and the sale made thereunder, by the said plaintiff, and they must find for the defendants." The action of the court in refusing to give this instruction is assigned as error.

The evidence shows that the constable sold more property (by mistake, as he claims) under the distress warrant than was necessary to pay the rent for which it was sued out and the costs attending the levy and sale. The officer immediately after the sale tendered the amount of this excess to the plaintiff, who declined to receive it. Some months afterward, however, the plaintiff went to the officer and asked for and received it.

It seems to be settled law that if one takes possession of another's property and sells it without lawful authority the owner may treat him as a wrongdoer and sue him for a trespass or for the conversion of the property, or he may affirm his acts and treat him as his agent and claim the benefit of the transaction.

It was held in *Hite* v. *Long,* 6 Rand. 457, 18 Am. Dec. 719, that if a plaintiff bring trover or detinue to recover a horse and

trespass for taking the same horse, a judgment for the defendant in the action of trover or detinue is a good bar to the action of trespass; for by bringing trover or detinue he waives the trespass. In trespass, as the court held, the plaintiff might have recovered damages not only for the force and violence but for the value of the horse; but having *elected* to sue for the horse only, or its value, he is bound by his election. *Sangster* v. *Com'th,* 17 Gratt. 124, 132, 133.

If suing for goods wrongfully taken, or their value, will waive the trespass, *a fortiori,* receiving pay for the goods, or the proceeds of their sale, where the wrongdoer has sold them, would have that effect.

Where the owner has once affirmed the acts of the wrongdoer and treated him as his agent, says Addison, "he cannot afterward treat him as a wrongdoer, nor can he affirm his acts in part and void them as to the rest. If, therefore, goods have been sold by a wrongdoer and the owner thinks fit to receive the price, or part thereof, he ratifies and adopts the transaction and cannot afterward treat it as a wrong." Addison on Torts, 33; 1 Cooley on Torts (3d Ed.), 162, 166.

The action of the plaintiff in receiving the excess of the proceeds of the officer's sale under the distress warrant was a ratification of the officer's act in selling more than he ought to have sold, and was a waiver of any wrongdoing on the part of the officer in making the sale. If the instruction rejected by the court had been limited to that liability it ought to have been given; but as it was made applicable to the suing out of the distress warant also it was properly refused.

Other errors are assigned as to instructions given and refused, but as the judgment complained of must be reversed for reasons already given, it will be unnecessary to consider them, since some of the questions involved in them have been discussed in passing upon other assignments of error, and the other questions are not likely to arise upon the next trial, when the evidence before the jury will be different.

The verdict of the jury must be set aside, the judgment of the court reversed and the cause remanded for a new trial to be had not in conflict with the views expressed in this opinion.

*Reversed.*